# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1588-17T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

E.T.,

    Defendant,

and

R.M.,

    Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF H.R.M.
and S.E.M., Minors.

_____

Submitted October 30, 2018 – Decided November 20, 2018

Before Judges Rothstadt, Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0171-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura Orriols, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Laura A. Dwyer, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith A. Pollock, Deputy Public Defender, of counsel; Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant R.M.[1] appeals from the Family Part's November 16, 2017 guardianship judgment and order terminating his parental rights to his and defendant E.T.'s (Elizabeth)[2] two children, H.R.M. (Hannah) and S.E.M. (Stephen), who were born in 2016 and 2017 respectively. The Division of Child Protection and Permanency (Division) and the Law Guardian contend that the order should be affirmed. After reviewing the record in light of the applicable

---

[1] To protect privacy interests, we use initials and fictitious names for the parents and children. See R. 1:38-3(d)(12).

[2] Elizabeth has not filed an appeal in this matter.

legal standards, we affirm substantially for the reasons stated by Judge Francine I. Axelrad in her November 16, 2017 oral decision.

The pertinent evidence was set forth in Judge Axelrad's decision and need not be repeated here in detail. The children have never lived with defendant, and he has not been active in either child's life due to his substance abuse problems, history of domestic violence, and criminal behavior that led to his repeated incarcerations. Throughout the litigation of this case, he repeatedly missed scheduled visitations and did not avail himself of court-ordered services despite the Division's attempts to schedule these services on his behalf. Significantly, defendant did not even make consistent efforts to communicate with the Division about his children.

This action began a month after Hannah's birth, in May 2016, when the Division took custody of her based upon Elizabeth's use of controlled dangerous substances, her and Hannah testing positive for opiates at the child's birth,[3] defendant's failure to respond to the Division's attempts to contact him, and a report that defendant had recently assaulted Elizabeth. After the court granted

_____

[3] The circumstances of the child's birth, which Judge Axelrad described as "horrific," included Elizabeth being alone with defendant in a motel room taking narcotics and delivering the baby herself, all in order to avoid the Division from finding out about the child being born.

A-1588-17T3

the Division care and custody of Hannah, it placed the newborn child with her maternal aunt and uncle. According to the Division's caseworker, that placement caused an incident of domestic violence against Elizabeth by defendant that resulted in Elizabeth sustaining injuries to her eye and face.

A year later, Stephen was born while defendant was incarcerated. The Division took custody of Stephen at birth after he and Elizabeth tested positive for opiates, cocaine, and buprenorphine. After the court granted the Division custody and care, the Division placed Stephen with Hannah in the care of their maternal aunt and uncle.

During the year between the children's birth dates, defendant did not stay in regular contact with the Division or otherwise make any effort to have contact with his child, even though the court had ordered weekly visitation. He repeatedly missed appointments for his court-ordered services and psychological and substance abuse evaluations. From July to December 2016, the Division repeatedly attempted to contact defendant without success. In late December 2016, the Division learned he was incarcerated, and on January 3, 2017, defendant called the assigned caseworker from jail. He explained that he was unsure when he would be released, and agreed to maintain contact with the caseworker.

A-1588-17T3

On May 4, 2017, two caseworkers met with defendant at the jail. During this meeting, he admitted that he had used cocaine throughout his relationship with Elizabeth, had previously stolen from others to purchase illicit substances, and had last used cocaine in December 2016. Defendant explained that he stopped attending visitations with Hannah and missed court appearances because he had not received notice. He stated that he expected to be released from jail in June or July of 2017, and would cooperate with the Division once released.

In accordance with a previously court-approved permanency plan, on May 16, 2017, the Division filed a complaint for guardianship of Hannah and Stephen. Afterward, on July 11, 2017, defendant was released from jail. During the ensuing days in July, police responded to numerous reports of domestic violence between defendant and Elizabeth, and multiple assaults between defendant and other individuals.

On July 21, 2017, the Division and defendant had their first contact since his release from jail. The Division scheduled visitation for defendant with his children and from July 28 to September 11, 2017, defendant attended weekly visits. On September 11, 2017, he appeared sick and ended the visit early. After that visit, he missed two more visits. On September 27, 2017, defendant was

A-1588-17T3

arrested for a violation of probation and remained incarcerated throughout the rest of the court proceedings, including the guardianship trial in November 2017, which he attended.

Prior to his incarceration, defendant had completed a psychological evaluation with Linda R. Jeffrey, Ph.D. in August 2017. Dr. Jeffrey concluded that defendant suffered from a severe, chronic adjustment disorder with a history of problems with the law; an intermittent explosive disorder; a specific learning disorder with impairment in written expression; a substance use disorder with a high probability of prescription drug abuse; and an antisocial personality disorder with narcissistic, paranoid, and borderline personality disorder features. She further found that defendant had a serious parent-child relational problem, had missed many visits due to his incarceration, and had a history of domestic violence based on the reported physical violence towards Elizabeth and a restraining order obtained against him in 2005 by the mother of his other two children. Those elements, coupled with defendant's unresolved problems with the law and untreated substance abuse disorder, led Dr. Jeffrey to opine that defendant could not provide a minimal level of safe parenting to Hannah and Stephen.

6

The doctor also conducted bonding evaluations between the children and defendant, and between them and their maternal aunt and uncle. She found that Hannah related to defendant as a "pleasant playmate," and opined that severance of Hannah and Stephen's contact with defendant was "unlikely to cause either child serious and enduring harm." As to the maternal aunt and uncle, Dr. Jeffrey found Hannah related to them as her psychological parents, and opined that Hannah "displayed a secure attachment toward both her maternal aunt and uncle."

On October 3, 2017, the Division advised the court that neither Elizabeth nor defendant were engaging in any court-ordered services. The Division further advised that it had considered the children's paternal grandmother and paternal aunt as potential placements, but was ruling them out as options for "best interest reasons."

The Division presented Dr. Jeffrey and caseworker Shareda Cunningham as witnesses at the guardianship trial held on November 15 and 16, 2017. Defendant attended the trial, was represented by counsel, and testified as his only witness.

At the conclusion of the testimony and counsels' summations, Judge Axelrad placed her decision on the record. Initially, the judge made detailed

credibility findings in which she concluded that both Dr. Jeffrey and Cunningham were credible and defendant was not. In reaching her conclusion, the judge noted that the doctor's opinions were unrefuted by defendant and that defendant's testimony was "flip" and unbelievable.

Turning to the evidence, the judge found the Division proved by clear and convincing evidence all four prongs necessary to terminate defendant's parental rights under N.J.S.A. 30:4C-15.1(a). She also concluded that defendant's history of domestic violence, "unremedi[]ed drug use," together with his repeated incarcerations and failure to "offer[] a viable plan for a safe and stable home," and his participation in Hannah's birth without insuring the child's health and safety, exposed the children to a risk of harm. The judge further found that defendant was unwilling or unable to eliminate the harm facing Hannah and Stephen despite the Division providing him with a number of services and as a result, he was incapable of meeting any of the children's material or emotional needs. She determined the Division had made reasonable efforts to reunify defendant with Hannah and Stephen, and that the Division had extensively explored, but properly ruled out, placement of the children with other family members. Finally, the judge found it would not do more harm than good to terminate defendant's parental rights.

After placing her decision on the record, Judge Axelrad entered a judgment of guardianship, terminating Elizabeth's and defendant's parental rights and granting the Division guardianship of Hannah and Stephen. This appeal followed.

On appeal, defendant presents the following points of argument:

POINT I

DCPP WILLFULLY VIOLATED THE DEFENDANT'S EQUAL PROTECTION AND DUE PROCESS RIGHTS TO EXACT ITS PREDETERMINED OUTCOME FOR THE CASE (NOT RAISED BELOW).

POINT II

THE JUDGMENT TERMINATING DEFENDANT'S PARENTAL RIGHTS SHOULD BE REVERSED BECAUSE THE LOWER COURT ERRED IN FINDING THAT DCPP PRODUCED CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN WERE AT RISK FROM THE PARENTAL RELATIONSHIP.

POINT III

THE JUDGMENT OF TERMINATION OF PARENTAL RIGHTS SHOULD BE REVERSED BECAUSE THE LOWER COURT ERRED IN FINDING THAT DCPP FULFILLED ITS STATUTORY OBLIGATIONS REQUIRED UNDER THE THIRD PRONG OF THE BEST INTERESTS TEST, AND THE COURT MISINTERPRETED AND MISAPPLIED THE LAW IN THIS PRONG.

POINT IV

THE JUDGMENT OF TERMINATION OF PARENTAL RIGHTS MUST BE REVERSED BECAUSE THE LACK OF VISITATION FATALLY UNDERMINED THE ABILITY OF DCPP TO MEET ITS UNQUESTIONABLY HEAVY BURDEN TO PROVIDE CLEAR AND CONVINCING EVIDENCE TO TERMINATE PARENTAL RIGHTS.

POINT V

THE LOWER COURT ERRED IN RELYING ON THE DCPP EXPERT'S OPINION AS IT DID NOT CONTRIBUTE TO AN UNDERSTANDING OF THE FACTS AT ISSUE.

Our review of an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We will uphold the trial court's findings as long as they are "supported by adequate, substantial, and credible evidence." Ibid. "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). Overturning a family court's factual findings is appropriate only when the findings "went so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007).

Nonetheless, we do not afford "special deference" to the family court's interpretation of the law. D.W. v. R.W., 212 N.J. 232, 245 (2012).

Applying our deferential standard of review, we conclude that Judge Axelrad's decision was supported by substantial credible evidence and her legal conclusions were correct. See F.M., 211 N.J. at 448-49. We affirm substantially for the reasons expressed in the judge's comprehensive oral decision. We conclude that defendant's appellate arguments challenging the judge's determination are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

Defendant did not raise his equal protection argument or object to Dr. Jeffrey's testimony at trial. Generally, we will not consider issues not raised before the trial court "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Therefore, because defendant's contentions address "[p]arental rights" which are a "matter[] of great public interest, we have considered [his] arguments on this issue." Ibid. However, we conclude his supporting contentions about being treated differently than Elizabeth in the litigation or not being provided with

11

sufficient notice of hearings are belied by the facts in the record.  Similarly, we conclude that the record clearly established that Dr. Jeffrey was qualified, her evaluation addressed relevant issues, and her conclusions were supported by facts in the record, which permitted Judge Axelrad to accept the doctor's unrefuted testimony.  See Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) ("the credibility of the expert and the weight to be accorded his testimony rest in the domain of the trier of fact").  We discern no error or unjust result in this case.  See B.H., 391 N.J. Super. at 343 (stating "[a]ccording to [Rule] 2:10-2, an appellate court will not reverse an error not brought to the attention of the trial court unless the appellant shows that it was 'plain error,' that is, 'error clearly capable of producing an unjust result'").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1588-17T3